UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) ) ) | |
| v. | ) ) | Crim. No. 18-40015-TSH |
| DANIEL DONALD,<br>       Defendant. | ) ) ) ) ) | |

**HILLMAN, S.D.J.**

**ORDER**
**July 29, 2022**

**Introduction**

The Defendant, Daniel Donald ("Donald" or "Defendant"), was charged with conspiracy to distribute heroin, possession with intent to distribute heroin, cocaine, cocaine base, and fentanyl, and being a felon in possession of a firearm. Prior to trial, he moved to suppress from the introduction of evidence against him at trial the results statements that he made to law enforcement officials. *See Mot. to Supp. Statements* (Docket No. 117)("Suppression Motion"). In support of his argument, Donald asserted that prior to answering questions posed to him during a post-arrest interview, he asked Task Force Officer Morris ("Morris")[1] whether anything he said could be used against him. Donald argued that Morris answered "No." The Court held an evidentiary hearing on Donald's multiple motions to suppress evidence, including the

---

[1] Morris is a police officer with the Worcester Police Department's vice squad unit and currently assigned as a task force officer with the Drug Enforcement Agency ("DEA") where he works as part of the DEA Worcester Tactical Diversion Squad ("WTDS").

Suppression Motion, at which Task Force Officer Morris testified and the audio/video recording of the interview with Donald was introduced into evidence and played in court. In response to questions from defense counsel, Task Force Officer Morris unequivocally testified that he did not tell Donald that any statements he made could not be used against him. He further testified that as he was trying to respond to Donald's question (*i.e.,*, "none of this can be used against me, can it?"), he was interrupted and therefore, never answered the question. After watching and reviewing the audio/video recording of the exchange between Morris and Donald, I found Task Force Officer Morris's response to Donald's question to be unintelligible and concluded that I could not agree that Task Force Officer Morris said "No," after the Defendant asked whether his statements could be used against him. Accordingly, I denied Donald's motion to suppress the statements and the case was tried before a jury.

## **Background Facts Relevant to Defendant's Motion**

Task Force Officer Morris testified at the trial that in conjunction with Donald's arrest and the beginning of the search of 13 Groton Place on November 30, 2017 (which occurred sometime around 5:00 p.m.), he read Donald his *Miranda* rights and he (Donald) signed a waiver form acknowledging the same. Donald invoked his Fifth Amendment Right not to speak with law enforcement agents at that time. Donald was kept in the basement of the 13 Groton Place apartment while law enforcement officers conducted a search of the property, including the adjacent free-standing cottage. At some point while the search was being conducted, law enforcement officers came into the basement apartment and indicated that they had found drugs and a firearm. Thereafter, Donald indicated that he wished to speak to an agent, specifically, the "bald" agent. Task Force Officer Morris and DEA Special Agent DiTullio ("Special Agent

DiTullio")[2], who at the time was in charge of the WTDS briefly talked with Donald in the bathroom of the basement apartment. Task Force Officer Morris reminded Donald that he had previously advised him of his *Miranda* rights. Donald indicated that he understood his rights and that he wished to speak to the agents. Donald was informed that any interview would take place at the Worcester Police Department ("WPD") and would be recorded. At that point, the searches having concluded, Donald was taken to the WPD and booked. Special Agent DiTullio and Task Force Officer Morris then conducted an interview of Donald which was audio and video recorded. At trial, Task Force Officer Morris was not asked any questions regarding the interview.

Special Agent DiTullio testified at trial and the audio/video recording of the Donald interview of Donald was admitted through him. Special Agent DiTullio testified that Donald reiterated at the police station that he wanted to speak with the agents. At the time of the interview on November 30th, Donald had been charged with state criminal offenses. When the interview started, Donald was again advised that he had been informed of his *Miranda* rights, which included a warning that anything he said could be used against him. He acknowledged receipt of *Miranda* warnings. During the interview, Task Force Officer Morris told Donald that if he cooperated, they would try to keep the matter at the state level. Additionally, Special Agent DiTullio told him that they were showing him their hand in good faith and that he would not be charged federally that night. He was, however, charged federally the next day. A few minutes into the interview, Special Agent DiTullio asks Donald if he knew what was in the hide. Donald responds: "None of this is going to be used against me, can it?" Special Agent DiTullio testified that he was not sure whether Donald was making a statement or asking a question, but that he

---

[2] Special Agent DiTullio was present for the search of 13 Groton Place and observed Task Force Officer Morris read Donald his *Miranda* rights. Special Agent DiTullio is bald.

perceived it as a statement. Special Agent DiTullio stated, "It is what it is." Donald then asks what he can do to help himself and thereafter, makes numerous incriminating statements.

Defense counsel asked Special Agent DiTullio to again listen to the recording and asked him if he heard Task Force Officer Morris say anything. Special Agent DiTullio responded "He said 'No.' " Defense counsel then reiterated "you heard Task Force Officer Morris say No?' and Special Agent DiTullio responded "Yes." Special Agent DiTullio was not asked whether he had an independent memory of Task Force Officer Morris's response to Donald's question, that is, he was only asked what he heard on the recording.

Based on Special Agent DiTullio's testimony that Task Force Agent Morris replied "No" when Donald asked whether anything he said could be used against him, Donald has filed Defendant's Fourth Motion for Reconsideration Of Court's Denial of Defendant's Motion To Suppress Statements (Docket No. 345). For the reasons set forth below, that motion is *denied*.

## Discussion

### Relevant Conversations between Donald and the Agents

Relevant to this motion, the following conversation took place at the Worcester Police Station the following Donald's arrest:

[1:16] Morris: I'm just gonna remind you that at the house I Mirandized you, read you your rights, you understood those right . . .

Donald: Yep.

Morris: . . . you signed the form saying you understood them. Um, everything's still the same and, um, you know if you wish to talk with us, if you want to stop at any time that's your right to do so.
 . . . .

[2:38] DiTullio: You know what we got out of the side of the house, you know exactly what was there, right?

Donald: None of this can be used against me can it?

DiTullio: We have the stuff so it's, so, it is what it is . . .

4

>Morris:  [response is unintelligible]
>
>Donald:  I understand so that's just, yes let's just . . . yes ok yes sure I assumed, Just ok so go ahead, so you got what you got and what can I do to help myself out is what I want to get to.
>
>….
>
>[3:46] Donald:  I understand that, you know, but I'm trying to do what I can to get myself out of a bad situation.  I know that I can guarantee to you guys but on your end, you can't guarantee much of anything outside of the fact that you know, "you help us out, we'll do what we can."  I don't want to put myself under the fucking gun giving statements, you know, of what was there, so on and so forth, and it get held against me in the court of law as evidence.  You know what I'm saying?  I know what you guys got but you have to prove that it's mine.  And we're not going to do that, okay, I'm just simply saying I know what the fuck was there and I wanna do what I can to help myself out and I know what I can do for you guys you know what I'm saying but unfortunately for me you guys don't know what you can do for me. . . yeah I understand I'm looking at a whatever 27 year bit but that doesn't necessarily mean I want to do a 10 year bit either.
>
>[4:48] Donald:  Hypothetically speaking, hypothetically speaking, let's say there was a kilo of coke, a little over 300 grams of dopy and a little over 200 pills and whatever, hypothetically . . . and a gun, hypothetically.

### Whether Donald's Statements Can be Used Against Him

Donald asserts that based on Special Agent DiTullio's testimony that Task Force Officer Morris said "No" when he queried "none of this can be used against me can it?" his statements were not voluntary and should be suppressed (entitling him to a new trial). He also argues that contrary to the Court's previous finding, he did not waive his *Miranda* rights.  The Government argues first that the "new evidence" cited by Donald is not in fact new nor is it material and that Donald has failed to establish that the Court should review its prior denial of his motion to suppress. Should the Court address the motion (the Court will do so), the Government argues it must be denied because it has met its burden of establishing by a preponderance of the evidence

5

that Donald knowingly, intelligently and voluntarily waived his *Miranda* rights. For the following reasons, I stand by my prior ruling denying the motion to suppress.

In determining the admissibility of the statements made by Donald during his custodial interview with the agents, the Court must determine whether he was properly apprised of his rights and, if he was, whether he knowingly, intelligently, and voluntarily waived them. I find that Donald was properly apprised of his rights at the commencement of the search at 30 Groton Place, that he expressly acknowledged having been advised of said rights, and that he further acknowledged having been advised of those rights prior to commencement of the interview at the WPD. I further find that Donald's criminal history makes clear that he is very familiar with *Miranda* warnings and the criminal justice system. He understood his *Miranda* right, knowingly, intelligently and voluntarily waived them, and agreed to talk to the agents. Accordingly, the determination of whether his statements are admissible depends on whether in light of what happened during the interview, his statements constituted his free and voluntary act.

"In assessing whether a confession is voluntary, courts must inquire 'whether the will of the defendant has been overborne so that the statement was not his free and voluntary act.'" *United States v. Jacques*, 744 F.3d 804,809 (1st Cir. 2014)(citation to quoted case omitted). The First Circuit's assessment of voluntariness considers " 'the totality of the circumstances, including both the nature of the police activity and the defendant's situation.' " *Id.*(citation to quoted case omitted). In making this determination, the Court considers "the length and nature of the questioning, promises or threats made by investigators, and any deprivation of the suspect's essential needs … the defendant's personal circumstances, including his age, education, intelligence, and mental condition, as well as his prior experience with the criminal justice

system. A defendant's calm demeanor and the lucidity of his statements weigh in favor of finding his confession voluntary" *Id.*(internal citations omitted).

At trial, Special Agent DiTullio was asked what he heard on the recording and responded that he heard Task Force Officer Morris say "No" in response to Donald's question regarding whether anything he said could be used against him. Special Agent DiTullio's interpretation of what was said on the recording must be considered in light of all of the evidence. The Court has repeatedly watched and listened to the audio/video recording of the interview in connection with the motion to suppress, at trial, and for purposes of the instant motion, and still finds that Task Force Officer Morris's response is unintelligible, that is, I still cannot determine that he said "No." The primary reason that the response cannot be heard is that Donald did not wait for the agents to respond before he started to make statements[3], thereby undermining his contention that he only talked to the agents because of the assurance that his statements could not be used against him. Additionally, even if Task Force Officer Morris said "No," it is not clear whether he was assuring Donald that his statements could not be used against him because Donald did not wait for either Special Agent DiTullio or Task Force Officer Morris to reply to his question. Instead, he and Special Agent DiTullio immediately began to talk and as Task Force Agent Morris started to speak, he was cut off by the dialogue between those two. Additionally, Donald never asked for clarification from either agent, nor does he again raise the issue of whether anything he says may be used against him. Moreover, statements made later during the interview undercut Donald's suggestion that he only talked after receiving such assurance. For example, he states that he doesn't "want to put myself under the fucking gun giving statements, you know, of what was there, so on and so forth, and it get held against me in the court of law as

---

[3] Task Force Officer Morris testified at the suppression hearing that he never completed his response because Donald interrupted him.

7

evidence." He then states he knows what the agents found, but would not acknowledge that it was his. At other times during the interview, he speaks in hypotheticals. Such word games create a strong inference that Donald understood anything he said could be used as evidence against him at trial, and that he did not understand Task Force Officer Morris's response (whatever it was) to be an assurance that such was not the case.

      The following additional facts weigh in favor of a finding that Donald's statements were voluntary. At the commencement of the search of 30 Groton Place, Donald was read his *Miranda* rights and exercised his right remain silent. Donald became aware that law enforcement officers had found drugs and a firearm in a hide during their search of the premises. *It was Donald who then initiated contact with law enforcement* and indicated he wanted to talk—asking specifically for Special Agent DiTullio (the "bald agent"). Donald was brought to the WPD and was placed in an interview room with three law enforcement officers. Two of those officers, Special Agent DiTullio and Task Force Officer Morris, took part in the interview of Donald. Prior to commencing the interview Task Force Officer Morris reiterated to Donald that he had been advised of his *Miranda* rights, which Donald acknowledged. The agents took Donald's handcuffs off before commencing the interview. The interview did not take an inordinate amount of time and Donald was talkative and lucid throughout. Donald, who has a significant criminal history and was experienced with the criminal justice system, made clear to Special Agent DiTullio and Task Force Agent Morris that he wanted to do what was necessary to help himself. Based on the totality of the circumstances, I find that Donald did not misunderstand his rights, that is, he knew that any statements made to Special Agent DiTullio and Task Force Officer Morris could be used against him at trial. In so making this determination, I find that neither Special Agent DiTullio or Task Force Officer Morris made any assurance to Donald that his statements could

8

not be used against him such that his statements were rendered involuntary or otherwise undermine the effectiveness of the *Miranda* warnings which he had been given. Accordingly, the Defendant's motion for reconsideration is denied.

## Conclusion

**It is hereby Ordered:**

Defendant's Fourth Motion For Reconsideration of Court's Denial of Defendant's Motion To Suppress Statements (Docket No. 345) is ***denied***.

/s/Timothy S. Hillman
**TIMOTHY S. HILLMAN
SENIOR DISTRICT JUDGE**